No. 25,453.

B. C. STAMPS, *Appellee*, v. THE MISSOURI PACIFIC RAILROAD COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. PERSONAL INJURIES—*Collision Between Street Car and Railroad Train—Contributory Negligence Question for Jury.* The motorman of a street car about to cross a railroad track, stopped the car, went far enough ahead of the car to obtain adequate view around a curve in the railroad track to determine it was safe to cross, and attempted to do so, when the car was struck by a train, moving at a speed of twenty miles per hour. The circumstances were such the motorman was required to anticipate a train might approach at a speed of twelve miles per hour. He was not required to anticipate a train might approach at a speed of twenty miles per hour, and if the train had not been moving at an excessive rate of speed, he could have crossed the track in safety. *Held,* he was not guilty of contributory negligence as a matter of law for not continuing to look for a train after determining it was safe to cross.

2. SAME—*Partial Payments as Compensation Accepted from Employer—Workman Not Estopped to Sue Wrongdoer for Damages.* Plaintiff's employer paid him compensation for a period of six months. Within that period plaintiff commenced action for damages against defendant and, when payments of compensation ceased, commenced compensation proceedings against his employer, who consented to arbitration, which has not been had. *Held,* acceptance of payments by way of compensation, the amount of which has not been ascertained, did not estop plaintiff from prosecuting his action for damages.

Appeal from Sedgwick district court, division No. 3; JESSE D. WALL, judge. Opinion denying a rehearing filed October 10, 1923. (For original opinion of affirmance see 113 Kan. 644.)

*W. P. Waggener, J. M. Challis,* both of Atchison, and *O. H. Bentley,* of Wichita, for the appellant.

*John W. Adams,* and *William J. Wertz,* both of Wichita, for the appellee.

OPINION DENYING REHEARING.

The opinion of the court was delivered by

BURCH, J.: A petition for rehearing has been filed expressing dissatisfaction with the manner in which the defense of election of remedy by acceptance of compensation was disposed of. Perhaps the opinion was too much abbreviated, but the court was under the impression application of the decision in the case of *Swader v. Flour Mills Co.*, 103 Kan. 378, 176 Pac. 143, was plain enough not to require elaboration.

Plaintiff's employer paid him compensation for the period of six months, in the sum of $394.24, and then desisted. Dates are not given, but defendant says this action was commenced within that period and when payments of compensation ceased plaintiff commenced proceedings against his employer. A petition was filed praying compensation in the sum of $2,270, and requesting arbitration. The employer consented to arbitration, and there that proceeding rests.

The employer could not fix amount of compensation by making a few payments which the workman accepted, and compensation has not been ascertained, settled, or provided for by agreement, arbitration, action, or conduct of the parties. The statutory election is not between proceedings, but between compensation, agreed to or established, and damages. The workman can receive but one satisfaction. This was plainly stated in the cited case. But, as the court held, he is not required to elect until he knows definitely which source of recompense for his injury is more advantageous. Meanwhile, it is of no concern to the wrongdoer that some payments are made and accepted by way of compensation. His liability for damages is not abated and, should the workman recover and receive compensation in full, the liability subsists in favor of the person paying the compensation, who, by express terms of the statute, is subrogated to the workman's right to damages, to the extent of compensation paid.

The petition for rehearing contains the following:

"We are unable to see the logic or force of the statement of the court that, if the train had not been moving at such an excessive rate of speed, the street car would have been off the track and out of danger before the train arrived. Quite true. Also, if the street car had remained in the barn that morning, it would not have been hit, or if the passenger train had been an hour behind time, the collision would not have occurred."

Stamps v. Railroad Co.

Perhaps the following will make the matter comprehensible. The car was not in the barn, but was in service, and was obliged to cross the railroad tracks. The train was not an hour behind time, but when plaintiff approached the railroad tracks he did not know just where it was, or whether he had time to cross in safety. The train did come around a curve and strike the car. Before crossing, plaintiff stopped his car, went ahead of it far enough to obtain adequate view of the tracks to determine whether it was safe to cross, and could see no train. If he had gone considerably further, he could not have seen the train—it was too far away. From the observation he made, he concluded he could cross in safety, and attempted to do so. In determining whether it was safe to cross, he was not required to take into account approach of a train at an excessive rate of speed. The fact was, he could have crossed in safety in front of a train not in sight when he looked, which was running at any reasonable rate of speed. If the train had not been moving at an excessive rate of speed, his car would have been across the tracks and out of danger before the train arrived. The logic of the matter is, defendant's negligence was the cause of the collision, and the force of it is, defendant will be obliged to pay the judgment.

The petition for rehearing contains the following:

"Neither can we see the applicability of the statement of the court to the effect that 'there was no testimony that the plaintiff should have anticipated a rate of twenty miles per hour.' Of course there was not. The appellant never for a moment admitted that its train was going twenty miles per hour. The schedule through the yard did not permit it. The fact that ignorant and biased witnesses swore to fanciful rates of speed would not have required or justified the appellant in putting on testimony which it could not procure, to the effect that Stamps should have anticipated a train at that point traveling twenty miles per hour. . . . He was bound to anticipate a train at that point, and at a speed of twelve miles per hour."

The jury found on conflicting evidence the speed of the train was twenty miles per hour. An admission by defendant of truth of the fact was not essential to validity of the finding. In the 112 volumes of reports of decisions of this court, much space is taken up with repetitions of statements that credibility of witnesses who testify in court is a matter to be determined by the jury and the trial court, who saw and heard them; that this court cannot on appeal determine conflicts in testimony given at the trial; and that this court is bound by findings of fact returned by the jury and approved by the trial court, based on conflicting testimony. Therefore, the reference

to ignorant and biased witnesses who swore to fanciful rates of speed is not pertinent. With these obfuscations out of the way, it is probably apparent the court's statement applied to one of the factors by which prudence or imprudence of plaintiff's conduct must be determined.

In the petition for rehearing it is said:

"The minimum of his duty, after he had made his perfunctory examination of the track, was to keep a vigilant lookout, after he started his car, for the train that he knew was liable to pass at any moment."

Here again defendant indulges in a practice which has been condemned so often there can be no excuse for it. The jury was interrogated specially with reference to perfunctoriness of plaintiff's observation of the track, and found specially his observation was adequate. It required a train running at the rate of twenty miles per hour to catch his car on the track. He was not bound to anticipate a train running at that rate of speed, or at any excessive rate of speed, and so he did not know a train was likely to pass any moment. On the other hand, he was warranted in believing no train would come before he could cross, and in acting accordingly.

The action was not defended on the ground plaintiff was guilty of contributory negligence in not continuing to look for a train after making prudent observation. In the answer his "duty" was correctly stated as follows:

"It was the duty and obligation of plaintiff to leave his car, and advance so far in front thereof as was necessary to give him such an unobstructed view of the track of defendant, in both directions, that he could determine whether it was safe to proceed across the track."

The specific charge of negligence was, plaintiff did not perform this duty, but indifferently and perfunctorily stepped down upon the ground with one foot, and made no observation whatever of defendant's track to ascertain approach of a train. According to the findings of fact, the charge of negligence was not sustained, and the proposed standard of duty was met.

There was no issue tendered that plaintiff was negligent because he did not keep on looking for a train after he started his car. There is nothing in the abstract to show the subject was presented to the district court as an issue of law, or was presented by the district court to the jury as an issue of fact. If, however, the district court did consider the issue to be in the case, it was properly determined.

Plaintiff stopped his car, and went forward to determine whether

it was safe for him to cross. He went far enough to give him adequate view for the purpose. He heard no train, saw no train, and concluded the track was clear. His conclusion was justified. He was not bound to anticipate the train might come around the curve as it did. He was required to anticipate a reasonable rate of speed only. If a train did come at any reasonable rate of speed, it was safe for him to cross, and further precaution was not required.

The street-car conductor and two passengers saw the train coming in time to leave the car, and were not injured. It is said this fact demonstrates plaintiff drove on the track without looking, at a time when it would have done him some good to look. The fallacy of the assertion has just been demonstrated. Plaintiff had just returned from a tour of observation, the result of which was sufficient to satisfy any reasonably prudent man he could put the car safely across the track before a train could reach him. That having been done, the requirement of due care was satisfied, and he was at liberty to give his attention to operation of his car.

The difference between this case and the ordinary case of a traveler about to go upon a railroad track may be illustrated by the decision in the case of *Reader v. Railway Co.,* 112 Kan. 402, 210 Pac. 1112. The train which struck Reader came through a cut between two bluffs a half mile from the crossing. When 200 feet from the crossing, he looked for a train and could see none. He could not depend on that observation. It was not adequate, and he was required to look again, before leaving a place of safety for one of danger, because when he looked he was obliged to anticipate a train might emerge from the cut the next instant and reach the crossing in thirty seconds. According to the petition for rehearing, and it may be said, according to the evidence, Stamps was required to anticipate a train which he could not see might be approaching at a speed of twelve miles per hour. This being true, he did not leave a place of safety for a place of danger when he started across the tracks. It was safe to cross, and if the train had not been moving at a rate of speed much greater than he was required to anticipate, the collision would not have occurred.

The petition for rehearing is denied.